UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------------ x
KEENAN CAMPBELL,                                          :
                                                          :
                           Plaintiff,                     :
                                                          :         **INITIAL REVIEW**
         -against-                                        :         **ORDER**
                                                          :
PAROLE OFFICER WILKEY, et al.,                            :         3:24-cv-879 (VDO)
                                                          :
                           Defendants.                    :
------------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

     Plaintiff Keenan Campbell is a sentenced inmate in the custody of the Connecticut Department of Correction ("DOC") and incarcerated at the Osborn Correctional Institution. He brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983 for violation of his rights under the Due Process Clause of the Fourteenth Amendment against Parole Officer Wilkey, Parole Officer Jackson, Deputy Warden Moore, and Counselor Otero. (Compl., ECF No. 1.) Plaintiff specifies that he sues Defendants in their individual capacities for damages.

     The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b). The Court has thoroughly reviewed all factual allegations in the Complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

I. **FACTUAL BACKGROUND**

While the Court does not set forth all of the facts alleged in Plaintiff's Complaint, it summarizes his basic factual allegations here to give context to its rulings below.

In 2023, Plaintiff was approved for community release and transferred to a halfway house. (Compl. ¶ 2.) On January 3, 2024, he was remanded to "actual" custody for allegedly violating the community release program and provisions. (*Id.* ¶ 3.)

On January 3, 2024, Plaintiff signed a waiver of Notice and Hearing that enabled him to participate in the Time Out Program ("TOP") for sixty days in lieu of a disciplinary hearing. (*Id.* ¶ 4.) After completion of the sixty-day participation period in TOP, Plaintiff was to be returned to the half-way house. *Id.* However, Plaintiff received and pleaded guilty to a disciplinary "citation" while he remained in custody. (*Id.* ¶ 5.)

According to Plaintiff's Complaint, the disciplinary "citation" nullified the waiver of Notice and Hearing and was supposed to trigger a proceeding pursuant to the DOC Administrative Directive to determine the lawfulness of his remand. (*Id.* ¶ 6.) Plaintiff claims, however, that he never received notice and a hearing. (*Id.* ¶ 7.)

Plaintiff alleges that Defendants Parole Officers Wilkey and Jackson, Deputy Warden Moore, and Counselor Supervisor Otero were responsible for overseeing his community release. (*Id.* ¶ 8.) He claims they should have reinstated the waiver of Notice and Hearing and released him to a halfway house. (*Id.*) However, Plaintiff remains in custody. (*Id.* ¶ 9.)

II. **LEGAL STANDARD**

Under 28 U.S.C. § 1915A, courts must review prisoner civil complaints in which a prisoner seeks redress from a governmental entity and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks

2

monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b)(1)-(2).

Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement" but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the court is "not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678.

With respect to *pro se* litigants, it is well-established that "[p]ro se submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006) (per curiam)). However, *pro se* litigants are still required to comply with Rule 8 of the Federal Rules of Civil Procedure. *See, e.g.*, *Wynder v. McMahon*, 360 F.3d 73,

79 n.11 (2d Cir. 2004) ("[T]he basic requirements of Rule 8 apply to self-represented and counseled plaintiffs alike."). Rule 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (alteration in original). A statement of claim that is not short and direct places "an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Harden v. Doe*, No. 19-CV-3839(CM), 2019 WL 2578157, at *2 (S.D.N.Y. June 24, 2019) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)) (internal quotation marks and citation omitted).

### III.  DISCUSSION

Plaintiff's Complaint asserts claims under 42 U.S.C. § 1983 for damages based on claimed violations of his Fourteenth Amendment procedural due process rights.

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]" 42 U.S.C. § 1983. "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright*

4

*v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'") (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991)). This is true with respect to supervisory officials, as well. *See Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020) (holding that plaintiff must "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability" in order to hold a state official liable for damages under § 1983 and that "it is not enough for [a plaintiff] to show that [a defendant] was negligent, or even grossly negligent, in [their] supervision of the correctional officers or in failing to act on the information [they] had").

## A.     Fourteenth Amendment

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84. The incarcerated plaintiff must show that he was deprived of a liberty interest that amounts to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484.

A prisoner has "no constitutional or inherent right . . . to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex,* 442 U.S. 1, 7 (1979). Thus, a state prisoner does not generally have a

5

liberty interest in the possibility of release. *See Wright v. Guadarrama*, No. 3:21-CV-710 (SRU), 2022 WL 19338, at *3 (D. Conn. Jan. 3, 2022); *Miller v. Lamont*, No. 3:20-CV-872 (MPS), 2020 WL 6136300, at *5 (D. Conn. Oct. 19, 2020) (dismissing inmate's procedural due process claim based on postponement of his consideration for community release decision because the "plaintiff does not have a liberty interest in release to a community or residential placement"). Similarly, a non-juvenile Connecticut state inmate does not have protected liberty interest in a parole eligibility hearing. *See Gray v. Giles*, No. 3:22-CV-1607 (MPS), 2023 WL 2139513, at *1 (D. Conn. Feb. 21, 2023) (citing cases).

Nonetheless, Plaintiff may—like a parolee—have a liberty interest in retaining his status on community release absent violation of community release provisions. *See Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (noting parolee has "conditional liberty properly dependent on observance of special parole restrictions" and "is entitled to retain his liberty as long as he substantially abides by the conditions of his parole"). Thus, for purposes of initial review, the Court assumes that Plaintiff is entitled to due process procedural protections prior to termination of his community release.

As Plaintiff's allegations suggest that Defendants—Parole Officers Wilkey and Jackson, Deputy Warden Moore and Counselor Supervisor Otero—were all responsible for implementing the community release procedures, the Court will permit Plaintiff to proceed on his Fourteenth Amendment procedural due process claims against Defendants in their individual capacities for damages for further development of the record.

### IV. CONCLUSION

For the reasons set forth above, the Court enters the following orders:

(1) Plaintiff may proceed on his Fourteenth Amendment procedural due process claims for damages against Parole Officers Wilkey and Jackson, Deputy Warden Moore, and Counselor Supervisor Otero in their individual capacities for damages.

(2) The Clerk shall verify the current work addresses for Deputy Warden Moore and Counselor Supervisor Otero with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the Complaint and this Order to them at their confirmed addresses within **twenty-one (21) days of this Order**, and report to the Court on the status of the waiver request by not later than the **thirty-fifth (35) day after mailing**.

The Clerk shall mail a waiver of service process request packet containing the Complaint and this Order to Parole Officer Parole Officers Wilkey and Parole Officer Jackson at the Connecticut Board of Pardons and Paroles, 55 West Main Street, Waterbury, CT 06702 within **twenty-one (21) days** of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.

If any defendant fails to return the waiver request, the Clerk shall arrange for in-person individual capacity service by the U.S. Marshals Service on that defendant, and that defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The Clerk shall email a courtesy copy of this Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them.

(5) The discovery deadline is **six months (180 days) from the date of this Order**. The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which the Clerk must send to Plaintiff with a copy of this Order.

(6) All motions for summary judgment shall be filed within **seven months (210 days) from the date of this Order**.

(7) Pursuant to Local Rule 7(a), a nonmoving party must respond to a dispositive motion (*i.e.*, a motion to dismiss or a motion for summary judgment) within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the Court may grant the dispositive motion without further proceedings.

(8) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just write the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he must indicate all of the case numbers in the notification of change of address. Plaintiff must also notify the defendants or defense counsel of his new address.

(9) Plaintiff shall utilize the Prisoner E-Filing Program when filing documents with the Court. He is advised that the Program may be used only to file documents with the Court. As discovery requests are not filed with the Court, the parties must serve discovery requests on each other by regular mail.

**SO ORDERED.**

Hartford, Connecticut
July 9, 2024

/s/Vernon D. Oliver
VERNON D. OLIVER
United States District Judge